**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHELLE BARNARD,** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **CIVIL ACTION NO. 3:15-2220** |
| | : | **(JUDGE MANNION)** |
| **LACKAWANNA COUNTY,** | : | |
| **BRIAN LOUGHNEY, in his** | | |
| **individual capacity,** | : | |
| **Defendants** | : | |

<u>**MEMORANDUM**</u>

Pending before the court is the defendants, Lackawanna County and Brian Loughney's Motion for Judgment on the Pleadings. (Doc. 9). Based upon the following analysis, the court will grant the defendants' motion.

**I.      Factual and Procedural Background**

By way of relevant background, on November 19, 2015, the plaintiff commenced the instant action pursuant to 42 U.S.C. §1983, claiming that the defendants engaged in First Amendment retaliation for the plaintiff's participation in First Amendment protected activities. (Doc. 1). The plaintiff, an employee of Lackawanna County for over fifteen years, participated in union picketing with the Lackawanna County Children & Youth unionized workers on May 14, 2015. *Id.* ¶¶ 10, 11. The plaintiff was subsequently suspended without pay in response to her presence at the rally. *Id.* ¶¶ 15-16. In her complaint, the plaintiff asserts two claims relating to her suspension.

In Count I, the plaintiff claims that defendants, Brian Loughney and Lackawanna County, suspended her without pay in direct retaliation for engaging in First Amendment protected activities. Id. ¶¶ 9-16. In Count II, the plaintiff alleges that Lackawanna County is liable under 28 U.S.C. §1983 because it failed to train and supervise its employees in a way that would ensure they did not harm employees engaging in union activities.

On December 14, 2015, the defendants filed an answer to the complaint, which both denies any liability and raises numerous affirmative defenses, including failure to state a claim and qualified immunity. (Doc. 8). In the answer, the defendants also attached five (5) exhibits to support and supplement their responses and statements made in the answer. *Id.*, Exs. A-E. The plaintiff then filed a Motion to Strike the Exhibits attached to the defendants' answer, (Doc. 11), and the defendants filed a brief in opposition. (Doc. 16). The plaintiff filed a reply brief to the defendants' opposition to her Motion to Strike on January 4, 2016. (Doc. 20). For the reasons noted herein, the court will deny the plaintiff's Motion to Strike. (Doc. 11).

Around this same time, the plaintiff also filed a Motion to Stay the Complaint until disability claims at EEOC are ripe for prosecution. (Doc. 17). The defendants filed a brief in opposition to the Motion on January 11, 2016, (Doc. 22), and the plaintiff filed a reply brief on January 21, 2016. (Doc. 27). This court denied the Motion to Stay on January 29, 2016. (Doc. 30).

Finally, the defendants filed a Motion for Judgment on the Pleadings on

December 14, 2015. (Doc. 9). On December 28, 2015, the plaintiff filed a brief in opposition to the defendants' Motion for Judgment on the Pleadings, (Doc. 19), to which the defendants filed a reply brief on January 11, 2016. (Doc. 21). The Motion is now ripe for this court's decision.

## II.   Legal Standard

Federal Rule of Civil Procedure 12(c) states, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). Judgment will be granted if "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005). Generally, the standard for deciding a motion for judgment on the pleadings pursuant to Rule 12(c) is identical to that for deciding a motion to dismiss pursuant to Rule 12(b)(6). Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991). The court must view "the facts presented in the pleadings and the inferences drawn therefrom in the light most favorable to the nonmoving party." *Id.*; *see also* Castaneira v. Potteiger, 621 Fed. Appx. 116, 119-20 (3d Cir. 2015) (not precedential); Washington v. Hanshaw, 552 Fed. Appx. 169, 171 (3d Cir. 2014) (not precedential). However, the court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See* California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower

Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). The court also need not accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 554 (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. *See also* Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 554, and providing further guidance on the standard set forth therein) (holding that, while the complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a claim and must state a claim that is plausible on its face).

In deciding the defendants' motion, the court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which plaintiff has identified as the basis of his claim. *See* Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). In addition, unlike a motion to dismiss, in ruling on a motion for judgment on the pleadings, "the court . . . reviews not only the complaint but also the answer and written instruments attached to the pleadings." Brautigam

v. Fraley, 684 F.Supp.2d 589, 591 (M.D. Pa. 2010).

## III.   Discussion

The defendants' Motion for Judgment on the Pleadings, (Doc. 9), argues that, pursuant to Rule 12(c), the plaintiff's Complaint must be dismissed for failure to "set forth actionable claims as against Defendants." (Doc. 9, ¶ 4). Specifically, the defendants' Motion rests upon the following arguments: 1) the plaintiff waived her First Amendment right to participate in sympathy strikes; 2) defendant Brian Loughney is entitled to qualified immunity from suit; and 3) the plaintiff failed to allege that defendant Brian Loughney was motivated by evil intent or that his conduct involved reckless or callous indifference, which thereby precludes a claim for punitive damages.

## A.   Consideration of Defendants' Exhibits

Each of the theories for dismissal rely on facts included in exhibits attached to the defendants' Answer. Therefore, as a preliminary matter, the court must determine whether the attached exhibits may be considered.

Rule 10(c) of the Federal Rules of Civil Procedure provide that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed.R.Civ.P. 10(c). The types of exhibits that are considered "written instruments," and are "incorporated within the pleadings by Rule 10(c) consist largely of documentary evidence, specifically, contracts, notes, and other 'writing[s] on which [a party's] action or defense is based.'" Rose v.

Bartle, 871 F.2d 331, 340 n.3 (3d Cir. 1989) (internal citations omitted). Furthermore, a "written instrument" may be characterized as a "legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate." Smith v. Hogan, 794 F.3d 249, 254 (2d Cir. 2015) (citing Black's Law Dictionary (10th ed. 2014)) (finding the Third Circuit's holding in *Rose v. Bartle* to be "persuasive" and "consistent with the general understanding of what a legal or a written instrument is"). Additionally, the Third Circuit has held that "'lengthy exhibits containing . . . evidentiary matter should not be attached to the pleadings.'" *Rose*, 871 F.2d at 340 n.3 (internal citations omitted); *see also* J.B. Hunt Transport, Inc. v. Liverpool Trucking Co., Inc., 2013 WL 3208586, at *3 (M.D. Pa. 2013) ("Exhibits solely containing evidentiary matter, such as depositions, are not considered 'written instruments' under Rule 10(c) and are typically excluded from consideration of the pleadings."). Finally, affidavits are not considered a "written instrument," and instead are considered outside the pleading. *Id.* Consideration of an affidavit at this stage would convert the motion to one for summary judgment. *Id.*

In the instant action, the defendant filed an Answer to the plaintiff's Complaint, to which he attached five exhibits. These exhibits include: 1) a certified copy of the collective bargaining agreement ("CBA"); 2) the June 25th letter noticing the plaintiff of a due process hearing ("Due Process Letter"); 3) the June 29th letter notifying the plaintiff of her one day suspension

("Suspension Letter"); 4) the grievance form submitted by the plaintiff ("Grievance Form"); and 5) the itemized outline of employee payment data ("Pay Stub"). (Doc. 8, Ex. A-E). Applying the law outlined above, the court finds that each of these documents is a "written instrument" to be incorporated into the defendants' Answer pursuant to Rule 10(c).

The first exhibit, the CBA, falls neatly within the definition of a written instrument as it is a contractual agreement that defines the plaintiff's rights and duties as an employee of the County of Lackawanna and member the American Federation of State, County and Municipal Employees District Council 87, AFL-CIO. (Doc. 8, Ex. A). Pursuant to Rule 10(c), the CBA is incorporated into the defendants' Answer for all purposes, and therefore, may be considered by this court in ruling upon the instant Motion for Judgment on the Pleadings.

Second, the Due Process Letter, while not a contract, does outline the plaintiff's due process rights related to disciplinary proceedings instigated by Lackawanna County. (Doc. 8, Ex. B). Moreover, the plaintiff's claim is based upon the defendants' decision to suspend her without pay and their reasons for taking such action. The Due Process Letter documents the steps taken by the defendants to investigate the alleged reasons for suspension and the due process provided to the plaintiff relating to this action; therefore, the plaintiff's claims and the defendants' defenses are based upon this document. Thus, the Due Process Letter is a "written instrument" and may be considered.

Third, the Suspension Letter, like the Due Process Letter, outlines the plaintiff's rights and liabilities pertaining to her disciplinary hearing. (Doc. 8, Ex. C). In addition, the plaintiff, in her complaint, specifically mentions and cites to the Suspension Letter:

> In the Plaintiff's disciplinary notice, it specific[sic] mentions that she was being disciplined for attending a "rally." Consequently, there is no doubt that because she participated in union activities, Plaintiff received an unpaid suspension that will forever impact her employment career.

(Doc. 1, ¶ 16).[1] Therefore, the plaintiff's claim is based, in part, upon this particular document. For those two reasons, the Suspension Letter is clearly a "written instrument" and may be considered by the court.

Fourth, the defendants also attached the plaintiff's Grievance Form to their Answer. (Doc. 8, Ex. D). The Grievance Form is a standard form completed by the plaintiff, wherein she sought redress for the County's suspension without pay. *Id.* It includes information regarding the Management's response to her grievances, in this case, denials. *Id.* Because the grievance form demonstrates the plaintiff's status as a member of the American Federation of State, County and Municipal Employees District Council 87, AFL-CIO (the union for the Lackawanna County Prison employees), it clearly demonstrates her legal status and accompanying rights

---

[1] The Suspension Letter does contain the language referred to by the plaintiff. It states that the plaintiff was "in a paid sick status but [the plaintiff was] not sick and attended a *rally*." (Doc. 8, Ex. A (emphasis added)).

as a member of the union. *Id.* It also outlines the due process she received and the rights she retains upon the Management's review of her grievances. Thus, the court finds that the Grievance Form is a written instrument and may be incorporated into the defendants' Answer.

Fifth, the Pay Stub attached to the defendants' Answer, is a "written instrument" for the purpose of Rule 10(c) because the plaintiff's claim is based upon information contained in the Pay Stub. (Doc. 8, Ex. E). Specifically, central to the plaintiff's claims is the plaintiff's use of her sick leave, and the Pay Stub clearly identifies the date in question and the plaintiff's use of sick leave on that date. Therefore, the court will consider the Pay Stub incorporated into the defendants' Answer.

Ultimately, the court finds that all exhibits attached to the defendants' Answer are not affidavits, do not contain lengthy evidentiary material, and fall cleanly within the definition of a "written instrument" for the purpose of Rule 10(c). Therefore, Exhibits A through E are deemed incorporated into the defendants' Answer for all purposes, including the instant Motion for Judgment on the Pleadings.

Prior to moving onto the substantive claims, the court would like to briefly address the plaintiff's previous arguments against this court's consideration of the abovementioned exhibits. In the her earlier Motion to Strike, the plaintiff briefly concluded–without further elaboration–that the exhibits attached to the defendants' Answer are evidence, and do not

constitute "written instruments." (Doc. 12, p. 2). To support this conclusion, the plaintiff relied exclusively on *In re Empyrean Biosciences, Inc. Securities Litigation*, a District Court case from outside the Third Circuit. 219 F.R.D. 408 (N.D. Ohio 2003). Even if this court were to find *In re Empyrean* persuasive, it does not lead to the conclusion that the plaintiff desires, namely, that the documents attached to the defendants' Answer are not "written instruments." The court in *In re Empyrean* was called upon to determine whether an affidavit attached to the complaint may be considered a "written instrument" pursuant to Rule 10(c). After surveying the case-law relating to Rule 10(c) throughout the United States Circuit Courts of Appeal, the court concluded that not all affidavits attached to a pleading are "written instruments," and, more specifically, that "an affidavit . . . which contains evidentiary support for the absent allegations, is not a "written instrument" for purposes of Rule 10(c)." *In re Empyrean*, 219 F.R.D. at 413. Since not one of the five documents attached to the defendants' Answer are affidavits, we find that the holding in *In re Empyrean* is inapplicable to this case, and that Third Circuit precedent provides sufficient guidance for the court's examination of the defendants' attachments. As such, the foregoing analysis remains unaltered by the plaintiff's arguments, and the court's finding that all exhibits attached to the defendants' Answer are "written instruments" will not be disrupted.

**B.    Defendants' Arguments in Support of Dismissal**

The defendants in this action present three arguments upon which they base their Motion for Judgment on the Pleadings. They argue that the plaintiff fails to state a claim because she waived the relevant First Amendment rights, and they argue that the defendant Brian Loughney is entitled to qualified immunity and therefore claims against him must be dismissed. They also argue that the plaintiff has failed to state a claim for punitive damages against defendant Loughney.

The defendants' primary argument for dismissal focuses on whether the plaintiff waived her First Amendment right to participate in sympathy strikes. The defendants argue that the plaintiff, as a Lackawanna County employee and member of the American Federation of State, County and Municipal Employees District Council 87, AFL-CIO, has waived her First Amendment rights through the CBA, and therefore, cannot state a claim for First Amendment Retaliation. (Doc. 10, p. 4). The plaintiff, on the other hand, sets forth several arguments to support a finding that the CBA does not constitute a constitutional waiver and the case-law presented by the defendants is inapplicable. (Doc. 19, pp. 4-5).

"The Supreme Court has long recognized that a party may waive constitutional rights if there is 'clear' and 'compelling' evidence of waiver and that waiver is voluntary, knowing, and intelligent." Democratic Nat. Committee v. Republican Nat. Committee, 673 F.3d 192, 205 (3d Cir. 2012).

"Determining whether waiver was voluntary, knowing, and intelligent in any particular case rests upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the waiving party." *Id.* (internal citations and quotations omitted). Moreover, the Third Circuit has further explained that constitutional or First Amendment rights may be *contractually* waived. *Id.* Therefore, it is possible for a person to contractually waive her First Amendment rights so long as the waiver satisfies the abovementioned criteria.[2]

The requisite "volition" and "understanding" for a First Amendment contractual waiver have been found to be present "where the parties to the contract have bargaining equality and have negotiated the terms of the contract, and where the waiving party is advised by competent counsel and has engaged in other contract negotiations." *Democratic Nat. Committee*, 673 F.3d at 205 (citing Erie Telecommunications, Inc. v. City of Erie, 853 F.2d 1084, 1096 (3d Cir. 1988)).

In the instant case, the plaintiff alleges that she "participated in union

––––––––––––––––––––

[2] The plaintiff argues because of her status as a County employee, her First Amendment rights are not susceptible of prospective waiver; however, she solely relies on a case brought under Title VII. (Doc. 19, p. 5 (citing Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974)). Given the law outlined above and the fact that the plaintiff in this case brought her claim under §1983 for a First Amendment violation, *not under Title VII*, the court finds this argument unpersuasive. First Amendment rights are indeed prospectively waivable under the plaintiff's circumstances.

picketing with the Lackawanna County Children & Youth unionized workers,"
and was subsequently suspended without pay in retaliation for the stated
participation. (Doc. 1, ¶¶ 11, 15). In the defendants' Answer, they allege that
she was a member of the American Federation of State, County and
Municipal Employees District Council 87, AFL-CIO, and as such, her
employment was governed by the CBA. (Doc. 8, ¶¶ 10, 15, 16); (Doc. 8, Ex.
D). Also incorporated into the defendants' Answer, *see supra*, is the CBA
itself, which outlines the rules governing employee abuse of sick time and
also includes an explicit waiver of the right to participate in strikes or
sympathy strikes. (Doc. 8, Ex. A, pp. 4-5, 15, 36). Nowhere in the Complaint
does the plaintiff allege that she was not a member of the union, nor does she
provide factual allegations that refute the authenticity or provisions included
in the CBA.

Therefore, the CBA may preclude the plaintiff's claim if the provision
governing "Strike Pledges," Article 2, Section 1, constitutes a contractual,
prospective waiver of the plaintiff's First Amendment right, in accordance with
the criteria identified above. Here, the CBA is the product of collective
bargaining between the American Federation of State, County and Municipal
Employees District Council 87, AFL-CIO and Lackawanna County; it was
negotiated by the union and county representatives. (Doc. 8, Ex. A, p. 3).
Pursuant to Pennsylvania Act 195, collective bargaining "is the performance
of the mutual obligation of the public employer and the representative of the

public employees to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment, or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached." 43 P.S. §1101.701. "Representatives selected by public employees in a unit appropriate for collective bargaining purposes shall be the exclusive representative of all the employees in such unit to bargain on wages, hours, terms and conditions of employment." 43 P.S. §1101.606. In this case, the union is the exclusive representative for the prison employees, including counselors like the plaintiff. (Doc. 8, Ex. A, p. 3). The CBA is the result of an arbitration that included argument and negotiation between attorneys representing the union and the County. Both parties were represented by counsel and appear to have had equal bargaining power during the arbitration. (Doc. 8, Ex. A (demonstrating that the panel of arbitrators included an arbitrator appointed by each party in addition to a neutral arbitrator)). There are no factual allegations from either party to hint that the parties' attorneys were anything but competent. All the procedures followed throughout the collective bargaining process were prescribed by Pennsylvania state law. *See* 43 P.S. §1101 (Public Employee Relations Act). This strengthens the court's finding that the CBA was negotiated fairly and by competent counsel. Furthermore, the court notes that the Third Circuit has long held that collective bargaining agreements are binding upon the individual union members.

14

Seborowski v. Pittsburgh Press Co., 188 F.3d 163, 168 (3d Cir. 1999);
Michota v. Anheuser-Busch, Inc., 755 F.2d 330 (3d Cir. 1985) ("[T]he
individual members of a union are bound by the terms of a no-strike clause
in a collective bargaining agreement."); Suburban Transit Corp. v. N.L.R.B.,
536 F.2d 1018, 1023 (3d Cir. 1976) ("The no-strike obligations in the collective
bargaining agreement were binding on the individual union members on
whose behalf the union signed the agreement, as well as on the union."). This
CBA is, then, binding upon the plaintiff as a member of the union.

The court deems the collective bargaining process fair and equal to both
parties and further finds that it is an agreement binding upon the plaintiff.
Next, to find that the CBA contractually waived public employees' First
Amendment right to participate in strikes and sympathy strikes, the court must
ensure that the language of the CBA clearly and explicitly waives such a right.
Democratic Nat. Committee v. Republican Nat. Committee, 673 F.3d 192, 205
(3d Cir. 2012). Article 2, Section 1 of the CBA provides, in relevant part:

> For the duration of this Agreement, or any extension thereof, none
> of the employees collectively or individually nor the Union, its
> officers, representatives or members, shall *directly or indirectly*
> *cause, engage in, authorize, instigate, aid, encourage, ratify or*
> *condone any strike or sympathy strike*. A strike is defined as a
> concerted action in failing to report for duty, the willful absence
> from one's position, the stoppage of work, slowdown or the
> abstinence in whole or in part from the full, faithful and proper
> performance of the duties of employment for the purpose of
> inducing, influencing, or coercing a change in the conditions or
> compensation or the rights, privileges or obligation of
> employment. . .

(Doc. 8, Ex. A, p. 4 (emphasis added)). In Article 2, Section 2, the CBA further states, "[i]n consideration of the no strike pledge the County shall not lock out employees . . . for the duration of this Agreement or any extension." *Id.* at 5. The terms of the CBA unambiguously waive the plaintiff's ability to participate in strikes or sympathy strikes. The court need not interpret the contract to come to this conclusion. Therefore, this explicit waiver amounts to a prospective waiver of the plaintiff's First Amendment rights insofar as the CBA precludes her ability to strike or participate in a sympathy strike.[3]

The relevant question then becomes whether the plaintiff, according to the facts alleged in the pleadings, was participating in a strike or sympathy strike that falls under Article 2 of the CBA. As stated, the CBA defines a strike as either 1) "a concerted action in failing to report for duty"; 2) "the willful absence from one's position"; 3) "the stoppage of work, slowdown"; or 4) "the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment." (Doc. 8, Ex. A, p. 4). Each of these four definitions is qualified in that the conduct must be for the "purpose of inducing,

---

[3] The plaintiff argues that the CBA does not "mention any waiver of rights of the First Amendment" and therefore the plaintiff has not waived her rights. (Doc. 19, p. 4). However, just because the CBA does not use the words "waiver of First Amendment rights," does not mean that it does not clearly waive a constitutional right. The language in the CBA expressly precludes participation in strikes and sympathy strikes, which are expressions of First Amendment speech. Thus, the language sufficiently mentions a waiver of First Amendment rights.

influencing, or coercing a change in the conditions or compensation or the rights, privileges or obligation of employment." *Id.* A sympathy strike, while not defined in the CBA, generally "refers to a strike conducted by workers belonging to one bargaining unit in support of a primary strike that is conducted by workers belonging to another bargaining unit." Children's Hosp. Medical Center of Northern California v. California Nurses Ass'n., 283 F.3d 1188, 1191 (9th Cir. 2002). It is a way for employees to "demonstrate their solidarity with their 'brothers and sisters' who are engaged in a primary strike." Eber Brothers Wine & Liquor Corp. v. Teamsters Local Union No. 118, 2005 WL 290142, at *3 (W.D.N.Y. 2005) (citing *Children's Hosp. Medical Center of Northern California*, 283 F.3d 1188).

Applying these definitions, the plaintiff's willful absence or failure to perform duties of employment in order to support another bargaining unit's strike in pursuit of changes in compensation or conditions, would be considered participation in a sympathy strike. The CBA explicitly precludes participation in a sympathy strike, and also precludes any union employee from "directly or indirectly caus[ing], engag[ing] in, authoriz[ing], instigat[ing], aid[ing], encourag[ing], ratify[ing] or condon[ing]" a strike or sympathy strike. (Doc. 8, Ex. A, p. 4).

In the plaintiff's own complaint, she alleges that she "*participated* in union picketing with the Lackawanna County Children & Youth unionized workers." (Doc. 1, ¶ 11). She further characterizes the union picketing as a

"union strike [that] was televised and received wide press coverage." *Id.* ¶ 14. Clearly, her complaint demonstrates that she *participated* in a sympathy strike by failing to report to work and perform her duties of employment on May 14, 2015, in support of the County Children & Youth unionized workers' strike and in support of their union efforts to improve "working conditions." *Id.* ¶¶ 11-14.

Ultimately, taking the plaintiff's factual allegations to be true, and considering all the pleadings, the court finds that the plaintiff participated in a sympathy strike that was precluded by the binding CBA and further that the plaintiff's CBA agreement clearly and plainly waives her First Amendment right to participate in a sympathy strike. Therefore, the plaintiff, having waived her First Amendment rights, cannot state a claim for First Amendment Retaliation against the defendants for their decision to suspend her as a result of participation in the County Children & Youth unionized workers' strike.

The court also finds that, because the plaintiff has failed to state a claim for First Amendment Retaliation in Count I of the Complaint for the defendant Brian Loughney's conduct, the plaintiff cannot state a claim for municipal liability resulting from such conduct. "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim. *See*, e.g., Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (if a municipal employee 'inflicted no constitutional injury . . . , it is inconceivable that [the municipality] could be liable')." Mulholland v. Government County of Berks, 706 F.3d 227, 238 (3d Cir. 2013); *see also* Grazier ex rel. White v. City of Philadelphia, 328

F.3d 120, 124 (3d Cir. 2003). Because it appears that the plaintiff has failed to plead facts sufficient to state a claim for First Amendment Retaliation, we further hold that Count II of the complaint, claiming municipal liability resulting from Count I, cannot stand and will also be dismissed.[4]

Finally, the defendants further argue that, even if the court rejected the defendants' argument regarding waiver of the plaintiff's First Amendment right to participate in sympathy strikes, claims against defendant Loughney must be dismissed because he is immune from suit under the doctrine of qualified immunity. (Doc. 10, pp. 9-13). Because we have already determined that both defendants are entitled to judgment on the pleadings on the grounds of First Amendment waiver, the court need not address the issue of qualified immunity.

## IV.    Conclusion

For the foregoing reasons, the court finds that the defendants are entitled to judgment on the pleadings because, taking the facts in the light

---

[4] The plaintiff seeks punitive damages "available pursuant to U.S.C. §1983." (Doc. 1, pp. 4, 5). As a result of the dismissal of both §1983 claims (count I and II), any punitive damages sought are also dismissed. "[A] claim for punitive damages arises out of the underlying cause of action and, therefore, absent a viable cause of action, an independent claim for damages cannot stand." Rodman v. Walmart Stores, Inc., 2014 WL 6885994, at *1 (E.D. Pa. 2014); *see also* Ruehl v. S.N.M. Enterprises, Inc., 2015 WL 2374256, at *2 (M.D. Pa. 2015). Thus, the court need not address the defendants' third theory for dismissal, which relates to whether the plaintiff is entitled to punitive damages as a result of defendant Loughney's actions because this court has found that she fails to state a claim under §1983.

most favorable to the plaintiff, the plaintiff has waived her First Amendment right to participate in a sympathy strike and therefore cannot state a claim for First Amendment retaliation. Thus, the defendants' Motion for Judgment on the Pleadings is **GRANTED**. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 8, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-2220-03.wpd